In the Matter of the Transfer Tax upon the Estate of STEPHEN K. REED, Deceased.

STATE TAX COMMISSION, Appellant; ARCHIBALD DOUGLAS et al., Respondents.

Tax — transfer tax — valuation of corporate stock owned by deceased president of corporation — erroneous exclusion of proceeds of insurance policy on life of decedent in favor of corporation on ground that collection came after death — quære whether loss to corporation resulting from death of its officer might not be offset against insurance.

1. Upon an appeal from a *pro forma* order, fixing a transfer tax, upon the ground that the appraiser in valuing stock owned by decedent included as an asset of the corporation the proceeds of life insurance policies carried by it upon the life of the decedent, who was its president, payable to the corporation upon his death, where the only question before the court was whether the proceeds of the insurance policies must be excluded from the valuation of the stock for the reason that collection came after death, it was error to exclude such proceeds. The policies of insurance were the property of the corporation; they were obligations to pay money at a future date; their value became fixed at the moment of the death of the insured and their proceeds became corporate assets by virtue of the insurance contracts. The proceeds of the policies are in no sense an increment of the corporate assets after death. They are the fruit of the policies and an element of the value of the corporate stock which should be included in valuing testator's estate for the purpose of taxing the transfer of the property by his will.

2. The question whether loss to the corporation resulting from the death of its officer should be offset against the insurance, is not here, the only contention below being that the increment occurred after death of the insured.

*Matter of Reed*, 216 App. Div. 714, reversed.

(Argued June 9, 1926; decided July 9, 1926.)

APPEAL, by permission, from an order of the Appellate Division of the Supreme Court in the first judicial department, entered February 26, 1926, unanimously affirming an order of the New York County Surrogate's Court assessing a transfer tax upon the estate of Stephen K. Reed, deceased.

*A. Welles Stump* and *Charles A. Curtin* for appellant. The face value of the insurance policies was properly included by the appraiser in the assets of the corporation. (*Matter of Knoedler*, 140 N. Y. 377; *Matter of Einstein*, 114 Misc. Rep. 452.)

*Archibald Douglas* and *William C. Shanley, Jr.*, for respondents. The value of a resident decedent's estate taxable in transfer tax proceedings in New York State is the gross value of the estate existing at the moment of death less obligations of his estate and the reasonable expenses of its administration. (*Matter of Swift*, 237 N. Y. 84; *Matter of Penfold*, 216 N. Y. 163; Chrystie on Inheritance Tax, 37; *Matter of Vassar*, 127 N. Y. 1; *Matter of Seaman*, 147 N. Y. 69; *Matter of Davis*, 149 N. Y. 539; *Matter of Smith*, 150 App. Div. 805.) Inheritance taxation in the State of New York is essentially a tax on transfers and that tax is based on a transfer of the property owned by the decedent during his lifetime and possessed by him at death. (*Knowlton* v. *Moore*, 178 U. S. 42.) The word "transfer" as used in the law relating to taxable transfers means "conveyance of the property owned by the person at the time of his death, to the person succeeding." (*Matter of White*, 208 N. Y. 64.) If the testator was not possessed of the increased

value of shares at the time life became extinct, possession was impossible thereafter. It follows that there could be no transfer of an increment of value due to his death. (Sutherland Stat. Const. 994; *U. S.* v. *Merriman*, 263 U. S. 179; *Gould* v. *Gould*, 245 U. S. 151; *Matter of Vassar*, 127 N. Y. 1; *Matter of Wadsworth*, 100 Misc. Rep. 439; *People* v. *Miller*, 177 N. Y. 51.)

POUND, J. The decedent herein died on the 26th day of April, 1923. Transfer tax proceeding was had, the report of the transfer tax appraiser filed and the *pro forma* order fixing tax was entered in the office of the surrogate of New York county. The executors appealed from this order upon the ground that the transfer tax appraiser in valuing the common stock of Pettit & Reed, Inc., of which deceased was a stockholder and the president, included as an asset of the corporation the sum of $150,000, proceeds of life insurance policies carried by the corporation upon the life of the decedent, payable to the corporation upon his death. The surrogate allowed the appeal and determined that the sum of $150,000 should not be included as an asset but only the cash surrender value of the policies or the sum of $28,920.22 should be so included, thus reducing the value of the assets of the corporation by the sum of $121,079.78 and making the value of each share of stock in the corporation $206.73 instead of $267.20 as fixed by the transfer tax appraiser.

As the decedent owned 1,203 shares of stock of said Pettit & Reed, Inc., the value of his holdings in the corporation was reduced to $248,696.19 from the sum of $321,441.60 as fixed by the transfer tax appraiser's report. The only question before the court was whether the proceeds of the insurance policies must be excluded from the valuation of the stock for the reason that collection came after death. The courts below have excluded such proceeds.

Considering this question alone, the result was erroneous.

When a decedent leaves policies of life insurance payable to himself or his estate, the proceeds of such policies are taxable under the Transfer Tax Law as property of which the deceased was seized and possessed at the time of his death. (*Matter of Knoedler*, 140 N. Y. 377.) Here the policies of insurance were the property of the corporation; they were obligations to pay money at a future date; their value became fixed at the moment of the death of the insured and their proceeds became corporate assets by virtue of the insurance contracts. It is sought to distinguish the transfer of decedent's shares of stock in the corporation from the transfer of a decedent's property when augmented by the proceeds of life insurance policies and to limit the value of the shares to the value which they had at decedent's death, excluding the proceeds of the policies. But the policies were owned by the corporation when decedent died. Death merely fixed the date of maturity. The proceeds of the policies were assets of the estate at the time of death. The argument to the contrary would defeat the taxation of the proceeds of life insurance policies payable to the estate of an insured. It might be stated as follows: Before death the insured owned only the surrender value of the policies; death fixed an obligation to the estate, not to the insured; therefore, the proceeds of the policies were not a part of decedent's property transferred by will or by the intestate laws of the State. But this court punctured this obvious paralogy when it said: " if these policies were not assets, then the appellants derived no title to their proceeds under the will, and they cannot make title through any other source." (*Matter of Knoedler, supra*, at p. 380.) So here, if the policies are not assets of the corporation, the corporation has no claim on the proceeds. The obligation to pay arises at the death of the insured. The payment is made according to the terms of the contract. The contract existed before death. Therefore, the proceeds of the policies are

in no sense an increment of the corporate assets after death. They are the fruit of the policies and an element of the value of the corporate stock which should be included in valuing testator's estate for the purpose of taxing the transfer of the property by his will.

Another question might present itself. It has been said that while a corporation has an insurable interest in the life of one of its officers, such life insurance for the purpose of determining the enhancement in value of the stock, is like fire and marine insurance, a contract of indemnity ( *U. S.* v. *Supplee-Biddle Co.*, 265 U. S. 189, 195), and not like ordinary life insurance, a contract to pay a definite sum of money upon the death of the insured in consideration of the premiums paid during life without reference to the value of the life insured. (*Reed* v. *Provident Sav. Life Ass. Soc.*, 190 N. Y. 111; *Empire Dev. Co.* v. *Title G. & T. Co.*, 225 N. Y. 53, 58.) The corporation thus seeks to indemnify itself against losses to its earning power in the event of the death of its officer. A general insurance by the corporation of all its officers without reference to their peculiar value to the corporation would, it is urged, be wagering and speculative and unenforcible, but insurance of a valuable life is like the insurance of the life of a debtor by his creditor to indemnify the creditor against loss. It would follow that loss to the corporation resulting from the death of its officer should be offset against the insurance. The question is not here. The insurance has been paid. The assets of the corporation have been augmented thereby. As between the insured and the insurance company the amount stated in the policy would be payable absolutely unless it were so excessive as to suggest a speculative wager. (*Ferguson* v. *Mass. M. L. Ins. Co.*, 32 Hun, 306; affd., 102 N. Y. 647.) The contention was made below that such increment occurred after the death of the insured. That contention failing, the point that might have been made — that the insurance

should be included in the assets, subject to a deduction due to impairment of the corporation's financial condition by the death of its president — will not be considered.

The orders appealed from should be reversed and the *pro forma* order of the Surrogate's Court affirmed, with costs in all courts.

HISCOCK, Ch. J., CARDOZO, McLAUGHLIN, CRANE, ANDREWS and LEHMAN, JJ., concur.

Ordered accordingly.